**IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| **Nathan Paul Reuter,** | ) | Case No. 07- 21128-DRD-11 |
| Debtor. | ) | |
| | ) | |
| **Tana S. Cutcliff, et al.,** | ) | |
| | ) | |
| Plaintiffs, | ) | Adversary N0. 08-02009 |
| | ) | |
| vs. | ) | |
| | ) | |
| **Nathan Paul Reuter,** | ) | |
| | ) | |
| Debtor. | ) | |

**MEMORANDUM OPINION**

This matter is before the Court on the objection of Nathan Paul Reuter ("Debtor") to the Motion for Attorneys' Fees filed by Michael S. Trom, LaDonna S. Henderson, James A. Fields, James D. Fields, and Patricia A. Reitz ("Movants"). The Movants were awarded attorneys' fees by the Court's Opinion issued in this case on April 14, 2010. Thereafter, Movants submitted detailed billing statements and a motion requesting allowance of their fees. Debtor objected to Movants' claimed attorneys' fees on a number of bases. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157(a) and (b). This is a core proceeding which this Court may hear and determine pursuant to 28 U.S.C. § 157(b)(2)(B). For all the reasons set forth below, Debtor's objection is sustained in part and overruled in part.

**I. PROCEDRUAL BACKGROUND**

Movants and four other individuals, not parties to Movants' current motion, are the adversary plaintiffs in the present case. On April 14, 2010, the Court issued a Memorandum

Opinion wherein it awarded Movants' reasonable attorneys' fees pursuant to Mo. Rev. Stat. § 409.5-509(b)(3). The Court advised the parties that it would consider a request for attorneys' fees and any objections made thereto. Movants filed a motion, detailed billing statements and supporting affidavits seeking the allowance and payment of attorneys' fees in the total amount of $172,285.00. Debtor objected to Movants' request on a number of bases, each of which the Court will address separately herein.

## II. DEBTOR'S OBJECTIONS TO MOVANTS' ATTORNEYS' FEES REQUEST

**A. The Court's award of attorneys' fees is neither based on a section of the Bankruptcy Code nor is it contractually based. Movants' attorneys' fees award is based on sub-section (b)(3) of § 5-509 of the Missouri Securities Act of 2003.**

Debtor's first objection to Movants' attorneys' fees request is that there is no contractual or statutory basis for such an award. This argument lacks any merit as the Court's Opinion, in the section entitled "Attorney Fees," clearly sets forth the Court's findings regarding the basis upon which it relied in granting Movants' attorneys' fees.

> The Bankruptcy Code makes no provision for an award of attorneys' fees to a prevailing creditor and there is no contractual basis for such an award in this case. Plaintiffs . . . are entitled to recover reasonable attorneys' fees pursuant to Mo. Rev. Stat. § 409.5-509(b)(3).[1]

Based on the fact that the Court's Opinion sets forth, in clear and concise language, the statue upon which attorneys' fees were granted, the Court finds Debtor's discourse regarding the American Rule, how American courts ordinarily handle attorneys' fees, Debtor's argument related to non-dischargeability and the Bankruptcy Code and the lack of an attorney fee provision in the investment contracts completely inapposite to Movants' motion for attorneys'

---

[1] *Cutcliff v. Reuter*, 427 B.R. 727, 768 (Bankr. W.D. Mo. 2010).

fees. The basis for the award for attorneys' fees in this case is statutory and any dispute regarding this finding would properly be raised on appeal rather than in an objection to a request for attorneys' fees.

> **B. Movants have a private right of action against Debtor pursuant to Mo. Rev. Stat. § 409.5-509(b). The Court found that Debtor violated Mo. Rev. Stat. § 409.3-301; therefore, Movants are entitled to an award of reasonable attorneys' fees pursuant to Mo. Rev. Stat. § 409.5-509(b)(3).**

Debtor's next objection to Movants' attorneys' fees request is that there is no private right of action in Mo. Rev. Stat. § 409.5-501, and that, although § 409.5-508 may provide criminal liability for a violation of §409.5-501, it does not provide for civil liability. Movants do not cite §409.5-501 as a basis for their right to bring an action for securities violation against Debtor and the Court does not base its award of attorneys' fees on this statute; therefore, this argument is completely irrelevant to Movants' motion.

The Court's ruling regarding Movants' rights to maintain a private cause of action against Debtor for securities laws violations, and its basis for the corresponding award of attorneys's fees was clear and concise in the Court's Opinion.[2]

Debtor argues that § 409.5-509 lists only four causes of action potentially available to private plaintiffs and that the evidence at trial was insufficient to establish that Movants satisfied the necessary statutory elements for liability to attach under any of the four options. This argument is nothing more than Debtor's attempt to reargue facts which have already been presented to the Court and found unpersuasive; however, for purposes of clarification, the Court will reiterate its basis for finding that Movants are entitled to attorneys' fees under § 409.5-

---

[2] *See Cutcliff*, 427 B.R. at 768 .

509(b)(3).

Section 409.5-509 provides for liability in the following situations: (1) liability of seller to purchaser for violation of §409.3-301; (2) liability of purchaser to seller; (3) liability of unregistered broker-dealer and agent; (4) liability of unregistered investment advisor and investment advisor representative; and (5) liability for investment advice. The Court found that Movants have a private right of action under the first scenario above and that Debtor is liable as a seller of unregistered securities in violation of §409.3-301.[3]

There was no dispute at trial that the contracts executed by Movants constitute investment contracts under § 409.1-102(28)(D) and are "securities" under Missouri law. There was also no dispute that said securities were not registered. The question raised by Debtor in the objection to Movants' attorneys' fees request is whether the evidence established that Debtor actually "sold" the investment contracts to Movants.

Debtor cites *Martin v. Shearson Lehman Hutton, Inc*., 986 F.2d 242 (8th Cir. 1993) and Mo. Rev. Stat. § 409.411(a)(1) (repealed by L. 2003, H.B. No. 380, § A) as support for the argument that previously, under Missouri law, an individual could be held liable for merely "offering to sell" a security in violation of securities laws, but not actually selling the security. Section 409.411(a)(1), which was repealed by the enactment of the Missouri Securities Act of 2003, provided in part that any person who "offers or sells a security in violation of [Missouri

---

[3]Section 409.3-301 states: It is unlawful for a person to offer or sell a security in this state unless:

(1) The security is a federal covered security;

(2) The security, transaction, or offer is exempted from registration under sections 409.2-201 to 409.2-203; or

(3) The security is registered under this act.

law] ... is liable to the person buying the security from him." *Shearson*, 986 F2d at 245.  Debtor argues, however, that because § 409.411(a)(1) was repealed by the Missouri Securities Act of 2003, liability may now only attach if a person "actually sells" a security in violation of the Act, rather than just offering to sell the security and cites § 409.5-509(b) as support for this argument.  The first clause of § 409.5-509(b) states "[a] person is liable to the purchaser if the person sells a security in violation of section 409.3-301."  Although Debtor does not elaborate on the argument, it appears that the point he is making in the objection is that the use of the conjunction "or" between the terms "offers" and "sells" in § 409.411(a)(1) is evidence that the legislature intended the statute to encompass securities laws violations under either scenario, thereby affording a broad scope of liability.  According to this reasoning, the enactment of § 409.5-509(b), which includes only the term "sells" in describing persons potentially liable for violating securities laws, restricted liability to only those who "actually sold" securities unlawfully.  Debtor cites no judicial authority or legislative history to support the argument that the use of the term "sells" in the first sentence of § 409.5-509(b) was to restrict the scope of liability under the Act.  Such an interpretation would be at odds with the definition of actions that are considered unlawful with regard to the registration of securities, the statute relevant to this case, which specifically states that if would be unlawful to "offer" <u>or</u> "sell" an unregistered security.  *See* Mo. Rev. Stat. 409.3-301.

The issue raised by the defendant in *Shearson* is factually distinguishable, but somewhat instructive, absent any other Missouri cases on point.  The issue in that case was whether liability under § 409.411(a)(1) could extend to a person who "offers or sells a security in violation of [Missouri law] ..." under a controlling person theory, and the 8th Circuit affirmed that

it could. *Shearson*, 986 F.2d at 245. The defendant in *Shearson* pointed to cases where other states have required strict privity between seller and purchaser for liability to attach, and the 8th Circuit indicated that it believed the Supreme Court of Missouri would be persuaded by the reasoning in *Pinter v. Dahl*, 486 U.S. 622, 108 S. Ct. 2063 (1988). The analysis in *Pinter* is insightful, again not because the case is factually similar to this case, but rather, because as the 8th Circuit notes in *Shearson*, the Missouri statute follows the federal statutory scheme closely, and the *Pinter* Court examines what constitutes a statutory "seller" under the almost identical federal securities act. *Shearson*, 986, F2d at 245.

In *Pinter v. Dahl*, the U. S. Supreme Court was called upon to interpret § 12(1) of the Securities Act of 1933, 15 U.S.C. § 77*l*(1). In that case, Pinter sold unregistered securities, consisting of interests in oil and gas leases, to the defendant, Dahl. Dahl then touted the venture to the other defendants- his family, friends, business associates-and helped them complete necessary documents prepared by Pinter to invest, but received no commissions from Pinter when each of them invested in the unregistered interests on the basis of Dahl's involvement. *Dahl*, 486, U.S. at 623. The question before the Supreme Court was whether defendant Dahl was a "seller" for purposes of § 12(1), such that he may be held liable for the sale of unregistered securities to the other investor-defendants. That statute provides, in pertinent part: "Any person who ... offers or sells a security" in violation of the registration requirement of the Securities Act "shall be liable to the person purchasing such security from him." 15 U.S.C. § 77*l* . This Court finds Justice Blackmun's analysis of the class of defendants which may liable as a "statutory seller" insightful because, although §12(1) includes both "offer" and "sell" as §409.411(a)(1) did, the Court interpreted whether the defendant could be a "seller" under the federal statute.

Justice Blackmun began by noting that the term "seller" was not statutorily defined and that there was no uniform definition among the courts. He found that, at the very least, the legislature must have contemplated the conventional, contractual buyer-seller relationship, where §12(1) imposed liability on an owner who passed title, or some other interest, in a security to the buyer for value. *Pinter*, 486, U.S. at 642. The Court then considered other defined terms such as "sale" and "sell," which were defined to include "every contract of sale or disposition of a security or interest in a security, for value," and the term "offer to sell," which was defined to encompass "every attempt or offer to dispose of, or solicitation of an offer to buy, a security or interest in a security, for value." *Pinter*, 486 U.S. at 643; 15 U.S.C. § 77b(3). The Court found that these definitions made it clear that the legislature did not intend to limit liability to only those situations where title passes. *Id*. The Court reiterated a position it took in a prior ruling where it stated: "The statutory terms ["offer" and "sell"], which Congress expressly intended to define broadly, ... are expansive enough to encompass the entire selling process, including the seller/agent transaction." *Pinter*, U.S. at 643, *citing United States v. Naftalin*, 441 U.S. 768, 773, 99 S.Ct. 2077, 2081, 60 L.Ed.2d 624 (1979) ( The U.S. Supreme Court reversed an 8th Circuit opinion which strictly interpreted the purpose of the Uniform Securities Act of 1933).

Like the Court in *Pinter*, this Court notes that the term "sell" is not statutorily defined by the 2003 Securities Act, however, other relevant terms such as "sale" and "offer to sell" are. "Sale" includes every contract of sale, contract to sell, or disposition of, a security or interest in a security for value, and "offer to sell" includes every attempt or offer to dispose of, or solicitation of an offer to purchase, a security or interest in a security for value. Mo. Rev. Stat. § 409.1-102(26). The Opinion includes numerous cases which have adopted an extremely broad

interpretation of the definitions of the terms "offer" and "offer to sell," so that they may encompass "ingenious methods employed to obtain money from members of the public to finance ventures" and as a recognition of the "ingenuity of those who resort to get rich schemes to fleece the gullible public." *See S.E.C. v. Addison*, 194 F. Supp. 709, 722 (N.D. Tex. 1961) and *State v. Kramer*, 804 S.W.2d 845, 847 (Mo. App. E.D. 1991).

In keeping with the majority of courts' tendency to adopt expansive definitions of the terms used in the securities statutes, this Court finds that the legislature intended Mo. Rev. Stat. § 409.5-509(b) to include all aspects of a sale, including the offer to sell when it used the term "sell." Evidence of Debtor's "offer to sell" the investment contracts to Movants includes:

1) Debtor specifically soliciting Movants to invest their money in the investment opportunity that he and his colleagues were offering;

2) Debtor offering assurances and explanations to Movants to quell any apprehensions that they had regarding the investment opportunity;

3) Debtor acting as the primary sales contact for two of the Movants and described as the "closer" for three of the Movants; and

4) Debtor being described as working the investment side of the shop as his day-to-day work at Vertical.

Because each of the Movants tendered cash in exchange for an interest in an investment contract, in addition to all of Debtor's efforts related to the "offer to sell" Movants the contracts, the Court finds that he sold them the contracts.

**C. Attorneys' fees were not awarded by the Court under a theory of vicarious liability.**

Debtor's next objection to Movants' attorneys' fees request is that if Movants are able to establish a claim for violation of § 409.5-509(a), then there is still no liability by Debtor for said fees as the partner of Daryl Brown. The Court notes that this objection in its entirety is

irrelevant as Movants neither base their request for attorneys' fees on a claim of violation of sub-section (a) of § 409.5-509, nor do they argue that attorneys' fees should be granted on a theory of partnership under any sub-section of § 409.5-509. The legal question of whether a partnership existed between Debtor and Daryl Brown was raised by all of the Adversary Plaintiffs in this case to establish Debtor's vicarious liability for false pretenses and false representations under 11 U.S.C. § 523(a)(2).

Neither Movants nor the Court relied on § 409.5-509(g) as a basis for an attorneys' fees award in this case; therefore, Debtor's argument on this point has absolutely no relevance to Movants' motion.  However, because Debtor's objection inaccurately characterizes the basis of the Court's ruling regarding the existence of a partnership between Debtor and Brown, the Court will briefly address this issue.

In the objection, Debtor raises two arguments, one based on Mo. Rev. Stat. § 409.813.1 and the other based on § 409.5-509(g). Both of these arguments are inapposite as they were neither raised by Movants, nor relied on by the Court in awarding attorneys' fees. Debtor next sets forth the statutory and judicial definition of a partnership and properly asserts that it was the adversary plaintiffs' burden to establish by clear and cogent evidence the existence of a partnership. Debtor next vigorously and inaccurately reargues the assertion that the sole evidence relied on by the Court in finding that a partnership existed between Brown and Debtor was Debtor's prior averment in a Petition for Damages that Debtor filed in the Circuit Court of Boone County ("Petition"). In the Petition, Debtor took the following position:

> In reasonable reliance on [Brown's] representation, and being ignorant of its falsity, [Debtor] was induced to enter into the partnership agreement with [Brown]. Pursuant to the [partnership] agreement, [Debtor] paid and transferred various sums to [Brown] . . . . Had [Debtor] known that the representation was not truthful, [Debtor] would not have

   entered into the [partnership] agreement . . . .[4]

As set forth in the Court's April 14th Opinion, the fact that Debtor took the position in a prior legal proceeding that he and Brown had entered into a partnership agreement was persuasive evidence of the existence of a partnership. However, the Court also relied on additional evidence of the existence of a partnership between Debtor and Brown including:

> (1) Debtor's testimony that he and Brown had an oral agreement to combine a portion of Debtor's company and some of his money with Brown's alleged Trust and their combined experience in the financial service industry;
>
> (2) Debtor's oral testimony regarding the plan that Debtor would manage the mortgage side of Vertical and that Brown would manage the investments;
>
> (3) Debtor's characterization of the business at Vertical as "a group of, you know, guys that were, you know, acted as partners and worked together;"
>
> (4) Chuck Bowman's testimony that the relationship between Debtor and Brown was that of a partnership;
>
> (5) Bowman's testimony regarding Brown bringing to the partnership his Trust and relationships with the alleged big hitters in the wealth management industry and Debtor being a gentleman, who brought to the partnership a legitimate company and the money to keep the operations going until the investments started paying off.

The Court's finding that a partnership existed between Debtor and Brown was supported by substantial and persuasive evidence and not based solely on one averment in a pleading filed in a previous case.

  Debtor also makes several vague and inconclusive arguments regarding the admissibility of the Petition at the trial. This argument is completely irrelevant to Movants' attorneys' fees request; however, the Court will address it briefly. Debtor argues that the general rule is that

---

[4] Plaintiffs' Exhibit No. 65, Petition for Damages.

pleadings are inadmissable in evidence. At trial, Debtor's counsel stipulated to the admissibility and admission of Adversary Plaintiffs' Exhibit Nos. 1 through 81, with the exception of Exhibit No. 77.[5] Therefore, Debtor stipulated that the Petition, Plaintiffs' Exhibit No. 65, was admissible. The Court finds that Debtor has waived any right he may have had to object to its admissibility and that the Court's consideration of this evidence was proper. Furthermore, as part of the string of citations regarding admissibility of prior pleadings, Debtor even admits, at ¶ 53 of the Objection, that facts alleged in a prior pleading are admissible if the usual tests of relevancy are met. Here, Debtor mistakenly asserts that his prior assertion in the Petition regarding his and Brown's relationship being that of a partnership is a legal conclusion; however, because the assertion is actually one of fact, by his own admission, it is admissible in this proceeding.

### D. The Court has subject matter jurisdiction over Movants' request for the allowance of reasonable attorneys' fees.

Debtor cites no legal authority for his argument that this Court does not have subject matter jurisdiction to rule on Movants' motion for attorneys' fees. Subject matter jurisdiction is conferred on this Court by 28 U.S.C. § 1334(b). Pursuant to 28 U.S.C. § 157(b)(2)(B) this is a core proceeding in which this Court may issue a final order. The issue is not whether the Court has jurisdiction but whether one of the elements of the claim for exception to discharge under § 523(a)(19) is present. *See United Student Aid Funds, Inc. v. Espinosa*, 130 S. Ct. 1367, 1378, 176 L.Ed.2d 158 (2010) (The Supreme Court found that § 523(a)(8)'s statutory requirement that a bankruptcy court find undue hardship before discharging a student loan debt is a precondition to obtaining a discharge order not a limitation on the bankruptcy court's jurisdiction.) Although

---

[5] Trial Transcript, V-984.

*Espinosa* is legally and factually distinguishable from this case, the Supreme Court was reacting to a similar jurisdictional argument, therefore, the opinion is instructive on this issue.

In this Court's April 14, 2010 Opinion, the Court indicated that under different facts it would likely be persuaded by the reasoning set forth in *Nusse v. Jafari (In re Jafari)*, 401 B.R. 494, 496 (Bankr. D. Colo. 2009), which held that a non-bankruptcy forum must determine liability on a securities violations claim prior to a § 523(a)(19) non-dischargeability determination. However, in this case, the Court did not need to consider if another forum should determine whether Debtor was liable for Missouri securities laws violations prior to making a dischargeability determination, because Debtor consented to this Court making that precise determination. Adversary Plaintiffs' Exhibit No. 64 is the "Consent Judgment and Permanent Injunction of Defendant Nathan Paul Reuter." That document states as follows:

> No restitution is being awarded in this consent judgment because the [Adversary Plaintiffs] listed above are pursuing claims for monetary relief in the bankruptcy court that are inclusive of any claims for restitution that might be raised in this matter. The [Adversary Plaintiffs'] claims for monetary relief will be determined and adjudicated by the United States Bankruptcy Court for the Western District of Missouri in Case no. 07-21128.[6]

Because one of the Adversary Plaintiffs' claims for monetary relief is a claim for Missouri securities violations, and because Debtor consented to this Court fully and finally adjudicating all of the Adversary Plaintiffs claims, this element is established by waiver or estoppel. It is disingenuous for Debtor to now argue that this Court cannot determine the Missouri securities violations claim.

Debtor next argues that the Missouri Merchandising Practices Act ("MPA") is inapplicable in this case. The Court specifically takes no position on this question, as it has no

---

[6] Plaintiffs' Exhibit No. 64.

relevance to Movants' motion. For purposes of clarification, the Court reiterates that it found that the Adversary Plaintiffs abandoned their claim that Debtor violated the MPA.[7] This is also irrelevant in the jurisdictional argument because when Debtor consented to having this Court fully and finally determine all of the Adversary Plaintiffs' monetary claims for relief, violation of Missouri state securities laws was included as a cause of action, therefore, Debtor already specifically consented to this Court determining whether Debtor is liable to the Adversary Plaintiffs for securities violations.

### E. Compensable and non-compensable attorneys' fees.

The Court must now decide the amount of attorney's fees to be awarded. The only claim on which fees can be recovered is the claim for violation of the Missouri securities laws. Only five of the Adversary Plaintiffs were determined to have such claims. In support of the claim for recovery of attorney's fees, Movants submitted a motion with legal authorities and a supporting affidavit from counsel. Attached to the affidavit were detailed time records from the period June 16, 2006, through and including September 4, 2009. The request was for fees in the amount of $172,285.00. The Court held a telephonic hearing requesting clarification of the fee arrangement and the allocation of fees among Movants. Movants submitted a supplemental brief and an additional affidavit.[8]

Movants correctly point out that the fee in such a case is based, at least initially, on the

---

[7] *See Cutcliff*, 427 B.R. at 738.

[8] Among other things, they appear to suggest that a fee of $500,796.00 might be appropriate under the circumstances. It is not clear if this amount is a new or amended request or simply an illustration of the reasonableness of the request previously made. The Court takes it as the latter, for several reasons. For one thing, this new sum is based upon a benchmark fee award (of 25%) which is not necessarily applicable. The cases cited in support of such a benchmark may be securities law cases, but are common fund class actions; this case is not. Second, the fee is calculated on an amount which double counts Movants' actual damages, aggregating the awards on the fraud and securities law claims. Movants are only entitled to a single satisfaction. Finally, it includes the punitive damages the Court awarded on the common law fraud claims, which are not available on the statutory securities law claims, the only claim conveying a right to attorney's fees.

lodestar amount – a reasonable hourly rate times the hours actually expended. The Court is then to consider the numerous factors specified in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). Debtor does not quibble much with the amount of the requested fee. He does not, for example, object to the $250 hourly rate assigned to Mr. Brown's efforts or argue that any of the time expended was unreasonable or was on tasks which were unnecessary. The Court likewise believes the rate to be reasonable and will apply it to the request. The Court has reviewed each of the time entries and cannot identify any that were unnecessary or unreasonable. Similarly, a consideration of the numerous *Johnson* factors justify an award of the kind requested.

Debtor does make a point that merits consideration. He argues that Movants are only entitled to recover fees incurred for time spent establishing their entitlement to recover damages for violation of the Missouri securities laws and not on other matters. The Court agrees with this principle, but not necessarily with all of the implications urged by the Debtor. One corollary is that Movants may not recover fees for time spent on issues related solely to the plan of reorganization and related issues. The Court has reviewed the time entries submitted and identified those that should be disqualified on this basis. They are itemized on Exhibit A to this Order; the aggregate value of such time is $19,516.50.[9]

Another corollary is that Movants may not recover for the time spent establishing that their claims are non-dischargeable under § 523 of the Bankruptcy Code. The Court disagrees, however, with Debtor's suggestion that any reduction is warranted on this ground. The same

---

[9] This number includes one half of the value of the time expended for October 17, 2008 and May 4, 2009. Both entries included time which the Court concludes non-compensable. Because the entries did not clearly allocate the time spent to the separate tasks performed, the Court assumed half of the time was spent on tasks which may be included in the request for reimbursement and half which may not.

evidence that would establish that Debtor violated the securities laws would also establish Movants' claims that those damages are non-dischargeable, since the non-dischargeability claim, asserted under § 523(a)(19), is made merely by demonstrating such violations. No additional evidence and thus no additional effort would be required. To the extent Movants' claims for exception to discharge are based on common law fraud, also included in § 523(a)(19), they are not necessarily distinct from the Missouri securities law claims. The Court found those laws violated both because of the sale of unregistered securities and also because of reckless misrepresentations and material omissions. Accordingly, time spent establishing those representations and omissions and the requisite state of mind that goes with them, also related to establishing Movants' claims under the Missouri securities laws.

The Court was initially concerned that the fees requested, based on the time records submitted, reflected all fees incurred by Movants' counsel on all claims of all the Adversary Plaintiffs, some of which may not legitimately be shifted to Defendant based on the Court's ruling. The supplemental submission, however, clarifies that the four Adversary Plaintiffs who were adjudged not to have securities law claims were always on a pure contingency fee arrangement with counsel and thus have no responsibility for the hourly fees claimed in the motion. In addition, the Court, as noted, reviewed each of the time entries and cannot identify a significant amount of time expended solely on behalf of any adversary plaintiff which this Court has determined not to have a claim conveying a right to reimbursement of attorney's fees. Finally, as Movants point out in their brief in support of the claim for attorney's fees, much of the time spent preparing and presenting evidence regarding Debtor's interaction which these other Adversary Plaintiffs would have been necessary in any event as they were witnesses with

-15-

information relevant to claims of the other Movants.

The original submission did not make clear to the Court the precise nature of the fee arrangement with the Movants. Notwithstanding Movants' request that the Court make an aggregate award of fees and not allocate fees to the claims of individual Movants (an effort Movants characterize as "interference"), the Court believes it must determine each Movants's fees so as to enter separate judgments on each claim for each Movant. Although this task is complicated by the complex and mutable fee arrangement with counsel, the Court believes with the additional detail provided by the supplemental suggestions, it can accomplish the task.

Two of the Movants (Trom and Henderson) have always been on an hourly basis with counsel. The other three, Reitz and James A. and James D. Fields, converted to a contingency fee arrangement (of 15%) effective March 10, 2009 for the services rendered subsequent to that date. For those Movants on an hourly rate agreement, their responsibility for fees incurred was based on their "fair share", their percentage share of the total loss of those Movants responsible for hourly fees. To determine the amount of the fees, therefore, the Court must first assess each Movant's share of the hourly fee incurred from inception of their representation to March 10, 2009, recalculate the hourly fees incurred by Trom and Henderson after the revision of the arrangement and the conversion of the other Movants to a contingency fee agreement and finally add in the amount of the contingent fee based on the Court's award to these three Movants on the securities law claims.

The detailed time entries attached to the motion are set forth in two parts. Exhibit A to the Motion identifies time expended by counsel prior to the filing of the Chapter 11 proceeding by Debtor. During that period of time, all Movants were on an hourly fee arrangement with

counsel. The aggregate value of that time appears to be $44,589.00. To that sum, the Court must add that portion of the compensable time expended after the date of the filing of the Chapter 11 proceeding but before the date of the alteration of the fee arrangement on March 10, 2009. Exhibit B to the Motion includes time entries for all time expended from the date of the filing of the Chapter 11 petition through and including September 4, 2009. The aggregate value of that time is $127,696.00. In order to calculate that portion of the time expended through March 10, 2009, which is compensable, the Court first deducted from this total the value of the time after March 10, 2009, a sum which it calculated as $36,300.00 (145.2 hours of Mr. Brown's time at $250 per hour) and then subtracted the value of those time entries before March 10, 2009, which are not eligible for reimbursement because they are unrelated to establishment of the Missouri securities law violation's claim, which is $9,566.50 (taken from Exhibit A to the Order). The resulting total is $81,829.50. Adding this to the time on Exhibit A to the Motion produced a total time value for the period up through and including March 9, 2009, of $126,418.50. According to the supplemental affidavit, the allocation of that fee among the five Movants should be as follows:

| Name | Percentage | Fee Amount |
| --- | --- | --- |
| Trom | 25.93 | $32,780.32 |
| Henderson | 44.44 | $56,180.38 |
| James A. Fields | 7.41[10] | $9,367.61 |
| James D. Fields | 14.81 | $18,722.58 |
| Reitz | 7.41 | $9,367.61 |

---

[10] In the Supplemental Affidavit supporting Movants' supplemental brief, this number is incorrectly show as 14.81%, which is inaccurate and would cause the total to exceed 100%.

The Court must then calculate the obligation of Movants Trom and Henderson for hourly fees incurred after March 10, 2009. As noted above, the total value of that time as reflected on Exhibit B to the Motion is $36,300.00. The Court must, however, subtract from that figure the value of time spent on those entries not entitled to reimbursement (taken from Exhibit A to the Order) which is $9,950.00, leaving a total fee of $26,350.00. The total loss of the remaining two Movants responsible for hourly fees was $475,000.00. With $300,000.00 of that sum, Ladonna Henderson is responsible for 63% of the fees incurred during this period of time, with Trom responsible for 37%. The respective fees are: $16,600.50 and $9,749.50.

Finally, to the amounts incurred during the period subsequent to March 10 for Movants Reitz, James A. and James D. Fields, the Court must add the contingency fee of 15% of the amounts awarded to them. Those amounts are:

| Name | Award | Fee Amount |
|---|---|---|
| Reitz | $50,000 | $7,500 |
| James D. Fields | $100,000 | $15,000 |
| James A. Fields | $50,000 | $7,500 |

The final calculation of fees, adding fees incurred for each of the Movants for the pre and post-March 10, 2009, periods is as follows:

| Name | Fee Award |
|---|---|
| Trom | $42,529.82 |
| Henderson | $72,780.88 |
| Fields, James A. | $16,867.61 |
| Fields, James D. | $33,722.58 |
| Reitz | $16,867.61 |

| **TOTAL** | $182,768.50 |

      While the Court previously noted that the 25% benchmark suggested by Movants is not necessarily applicable, based on its own experience, the Court is aware of the fact that contingency fee awards vary from approximately 25% to 40%. By way of comparison, 25% of the total award of $675,000.00 on the securities violation claims would be $168,750.00, slightly less than the amount requested. An award of 25% would be in the low end of the range. This calculation and the calculation performed above indicate that the fee amount requested is consistent with the Movants' fee agreements with counsel and is entirely reasonable. Accordingly, the Court awards attorney's fees to the Movants in the amount of $182,768.50, allocated as shown in the table above.

### III. CONCLUSION

      For all the reasons stated above, Debtor's objection to Movants' motion for attorneys' fees is sustained in part and overruled in part. The Court grants Movants' attorneys' fees request in the total amount of $182,768.50 as set forth in detail above.

      A separate order will be entered in accordance with Rule 9021.

DATED:    September 10, 2010                /s/ Dennis R. Dow
                                                            HONORABLE DENNIS R. DOW
                                                            UNITED STATES BANKRUPTCY JUDGE

Copies to:
James F. B. Daniels
David G. Brown